208 So.2d 423 (1968)
William EVERHARDT, Arnold Eckland, Russell E. Garrett, Dorothy Hayes as Tutrix of Edward Hayes, and Greater New Orleans Motorcycle Association
v.
CITY OF NEW ORLEANS, Victor H. Schiro, and Joseph Giarrusso.
No. 2977.
Court of Appeal of Louisiana, Fourth Circuit.
March 4, 1968.
Rehearing Denied April 8, 1968.
Writ Granted June 4, 1968.
*424 Michael O. Miranne, William F. Wessel, New Orleans, for William Everhardt, Arnold Eckland, Russell E. Garrett, Dorothy Hayes as tutrix of Edward Hayes, and Greater New Orleans Motorcycle Association, plaintiffs-appellants.
Alvin J. Liska, Maurice B. Friedman, New Orleans, for City of New Orleans, Victor H. Schiro, and Joseph Giarrusso, defendants-appellees.
Before YARRUT, CHASEZ and JANVIER, JJ.
CHASEZ, Judge.
Plaintiffs, one retail motorcycle dealer and a group of motorcycle riders residing in the Greater New Orleans Area, brought a class action in the Civil District Court for the Parish of Orleans, to enjoin the City of New Orleans from enforcing a penal ordinance requiring all cyclists to wear helmets while operating motorcycles within the city limits. Plaintiffs invoke this equitable remedy by asserting the ordinance is unconstitutional and that its enforcement will cause plaintiffs irreparable injury.
After defendant urged a declinatory exception to the jurisdiction of a civil court to enjoin enforcement of a penal law, but before the exception was argued, plaintiffs amended their pleadings to pray, in the alternative, for a declaratory judgment.
The City's answer averred the ordinance is a valid exercise of the police power in regulating matters concerning the public safety of its citizens.
From judgments maintaining the declinatory exception and declaring the ordinance is constitutional, plaintiffs have appealed.
Plaintiffs attack the validity of City Ordinance 3536, M.C.S., Sections 38-228.1 (c), 38-228.2 and 38-231 (f) Item No. 94. The pertinent section at issue is 38-228.1 (c) which provides:

"Headgear: No person shall operate or ride upon any motorcycle or any motor driven cycle unless such person is equipped with and wearing on the head, a safety helmet of the type and design manufactured for use by the operators of such vehicles, which shall be properly secured with a chin strap while the vehicle is in motion. All safety helmets shall consist of lining, padding and chin strap."
The purpose for its enactment is to minimize head injuries to the cyclist who is involved in an accident.
While plaintiffs have leveled several attacks against the constitutionality of this ordinance, we think the most serious issue presented for our determination is whether *425 the exercise of police power vested in a lawmaking body extends to forcing a citizen to protect his own well-being, or whether it is limited to regulation of individual conduct when that conduct might affect the well-being of other persons in the community.
Before discussing the constitutional question, we must dispose of plaintiffs' argument that the City has usurped a state function in passing this ordinance. They urge the City may not regulate motorcycle traffic within its corporate limits because the state has previously legislated in this field.
While it is true that the state has enacted motor vehicle and traffic regulations in the Louisiana Highway Regulatory Act (LSA-R.S. 32:1 et seq.), the Louisiana legislature has reserved to local authorities the power to regulate the flow of traffic within their corporate limits under their general police power. The limitation upon this power is simply that a municipality may not pass a law that modifies or conflicts with a state statute. [See LSA-R.S. 32:41(13)]. The motorcycle ordinance is well within the limits proscribed by the state as it neither modifies nor conflicts with state law.
Having determined the City is entitled to enact traffic regulations under its general police power, we must next consider whether the ordinance at issue is a valid exercise of the police power.
An ordinance is presumed to be constitutional. In Schwegmann Bros. v. Louisiana Board, etc., 216 La. 148, 43 So.2d 248, at p. 255 the Louisiana Supreme Court stated:
"It is elementary that an act of the Legislature is presumed to be legal, and the judiciary is without right to declare it unconstitutional unless that is manifest. This rule is strictly observed in cases involving laws enacted in the exercise of the state's police power. Further, under certain circumstances and when validly exercised the police power may encroach upon the due process guaranteed by the state and federal constitutions. * * *"
The strong presumption of constitutionality stems from judicial recognition of the necessity to vest in lawmaking bodies sweeping powers to regulate public health, morals and safety for the good of its citizenry; however, both federal and state jurisprudence imposes some constitutional restraints on the lawmakers.
The police power of a State today embraces regulations designed to promote the public convenience or the general prosperity as well as those to promote public safety, health and morals. The police power has been extended to legislation designed to promote the greatest welfare of the State. (See Nashville C. & St. L. Ry. v. Walters, 294 U.S. 405, 55 S.Ct. 486, 79 L.Ed. 949 (1934) and Eubank v. City of Richmond, 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156 (1912).) Even with the ever increasing expansion of police power, legislation enacted under its guise must concern the interest of the public generally.
The Louisiana Supreme Court so stated in Schwegmann Bros. v. Louisiana Board, etc., supra, as follows:
"`In City of Alexandria v. Hall, 171 La. 595, 131 So. 722, 724, the following language found in State ex rel. Newman v. City of Laramie, 40 Wyo. 74, 275 P. 106 was quoted approvingly:
"`To justify the state in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; * * *'"
The same limitation upon exercise of the police power in enacting legislation was applied in Weinberg v. Northern P. Ry. Co. (8 Cir.) 150 F.2d 645. At page 651 the Court observed:
"If the ordinance can be justified it must be on the theory that it is a reasonable *426 exercise of the police power vested in the City. The City Council, however, may not under the guise of protecting the public interest, arbitrarily interfere with the operation of the common carrier or impose unreasonable restrictions on its lawful calling. To justify the legislation it must appear that the interest of the public generally, as distinguished from those of a particular class, require such interference, and even when this condition may be said to exist, the means to accomplish the purpose must be reasonably necessary and not oppressive nor arbitrary. Lawton v. Steele, 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385; * * * (other citations omitted)."
(Emphasis added.)
In the instant case we must consider whether the helmet requirement meets the test of a regulation enacted to promote the safety of the public at large. The only function of the helmet requirement we are able to discern is to minimize the extent of injury to the individual cyclist involved in an accident, and not to contribute to the safety of the motoring public at large. Thus we are concerned with a limitation of the personal liberty of the individual motorcyclist.
The Fourteenth Amendment of the United States Constitution (Section 1) guarantees that no citizen will be deprived of life, liberty or property without due process of law. The due process clause tends to secure equality of law in the sense that it makes a required minimum of protection for everyone's right of life, liberty or property, which the Congress or the legislature may not withhold. The guaranty of equal protection is aimed at individual or class privilege, on the one hand, and oppression or inequality on the other. (See Truax v. Corrigan, 257 U.S. 312, at 332-333, 42 S.Ct. 124, 66 L.Ed. 254 (1921)).
In our view the helmet ordinance constitutes a denial of due process of law to plaintiffs in that it deprives them of an individual liberty without promoting a purpose beneficial to the public at large. Deprivation of personal liberty has been upheld in instances where said restriction operates to promote the public welfare. Thus compulsory vaccination laws are valid because the citizenry at large is protected from a potential smallpox epidemic (Zucht v. King, 260 U.S. 174, 43 S.Ct. 24, 67 L.Ed. 194 (1922)); however, without a valid benefit flowing to the public generally, an ordinance restricting a personal liberty of the individual is in contravention to the individual guarantees safeguarded by the due process clause.
Further, we conclude the ordinance also denies plaintiffs the equal protection of laws in that it imposes undue restrictions on one class of the motoring public without any salutary effect to the public at large. While it is true that regulations for the public safety may press with more or less weight upon one than on the other and remain within the constitutional pale, they must be designed to promote the general good, not to impose unequal or unnecessary restrictions on one limited class without providing a benefit for the public at large.
A similar ordinance requiring cyclists to wear helmets was declared unconstitutional by a New York court in People v. Carmichael, 53 Misc.2d 584, 279 N.Y.S. 2d 272. In that case the Court concluded, as have we, that an individual cannot be required to protect his well-being if his conduct affects only him. The New York court suggested that if the helmet ordinance was not a deprivation of personal liberty, perhaps the State might next have the power to ban smoking or to require all citizens to retire at 10 p. m. as a measure to protect their individual well-being. We thought the point was well taken.
Having concluded the ordinance is unconstitutional, we must next determine what relief is available to plaintiffs.
*427 In our opinion plaintiffs may not invoke the equitable powers of our civil courts to enjoin enforcement of the ordinance because the law under attack is a penal ordinance. For injunctive relief in the instant case, plaintiffs must establish that the ordinance is unconstitutional, that a property right has been invaded and that plaintiffs will suffer irreparable injury. (See Olan Mills, Inc. of Tennessee v. City of Bogalusa, 225 La. 648, 73 So.2d 791, 798.)
From our review of the evidence we conclude plaintiffs failed to prove enforcement of the helmet ordinance will cause or has caused irreparable injury.
Plaintiffs allege the helmets obscure vision and hearing, thus creating a hazard to the cyclist. Richard Garrett, the plaintiff who operates a motorcycle sales and service business, stated that only the competition helmet affects the cyclist vision and hearing. He asserted the half helmet does not cover the ears nor obstruct the cyclist's vision and meets the standards set forth in the ordinance.
Plaintiffs allege the helmets are a health hazard. Betty White testified that she fainted while wearing a helmet, attributing her seizure to the helmet. On crossexamination it was developed that she rode on a motorcycle approximately five times a week and had worn a helmet since the ordinance was in effect. She only fainted one time. She conceded she fainted on another occasion while not wearing a helmet. We hardly think her testimony supports the conclusion that wearing a helmet induces fainting spells.
Plaintiffs further assert the expense of the helmet is oppressive and plaintiffs are injured because they are unable to buy helmets. Helmets may be purchased within the $10 to $69 price range. One plaintiff claiming economic hardship owns two motorcycles but cannot afford a helmet. Another, whose fourteen year old son rides a motorcycle, claimed she could not afford a helmet and her greatest fear connected with her son's riding is that he will lose his helmet and she will not be able to replace it. (Presumably she can afford gas and maintenance on a motorcycle.)
This sampling of the evidence reflects the entire tenor of testimony adduced on plaintiffs' behalf, and we are unable to conclude therefrom that plaintiffs face irreparable injury.
In our view the trial court correctly decided the civil court has no jurisdiction to grant an injunction and that the appropriate remedy was a declaratory judgment. This form of procedure is authorized by LSA-C.C.P. Art. 1872 which states:
"A person * * * whose rights * * * are affected by * * * a municipal ordinance * * * may have determined any question of construction or validity, arising under the * * * ordinance * * * and obtain a declaration of rights, status or other legal relations thereunder."
In the Olan Mills case, cited supra, the Supreme Court in withholding injunctive relief through civil proceedings commented parenthetically that declaratory judgment would have been an appropriate civil remedy.
For the reasons assigned the judgment maintaining the declinatory exception and withholding injunctive relief is affirmed and the declaratory judgment issued maintaining the constitutionality of the helmet ordinance is reversed, and it is now declared by this Court that Ordinance 3536, M.C.S. Sections 38-228.1 (c), 38-288.2 and 38-231 (f) Item No. 94 is unconstitutional.
Affirmed in part; reversed in part; and rendered.
JANVIER, Judge (concurring).

I offer this short concurrence merely to stress the fact that this record contains not one word which indicates that the safety *428 of the general public is to the slightest extent favorably affected by the wearing of helmets by motorcycle drivers. In fact, the record indicates the contrary; that to some slight extent the hearing and the sight of such an operator may be adversely affected by such a helmet and thus the damage to the public increased. Accordingly, the right of the motorcycle driver to wear such headgear as pleases him is denied him without any resulting benefit to the public generally.