Kathleen **CARTER** et al., Plaintiffs-Appellants,

v.

**CITY OF FORT WORTH** et al., Defendants-Appellees.

No. 71-2496.

United States Court of Appeals, Fifth Circuit.

March 3, 1972.

Rehearing and Rehearing En Banc Denied April 20, 1972.

Don Gladden, Marvin Lawrence Collins, Ft. Worth, Tex., for plaintiffs-appellants.

S. G. Johndroe, Jr., City Atty., Jerome H. Parker, Jr., Asst. City Atty., Fort Worth, Tex., for City of Fort Worth.

Joseph H. Sharpley, Asst. Atty. Gen., Austin, Tex., for Crawford Martin.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

COLEMAN, Circuit Judge:

Article 6, Section 3, of the Texas Constitution Vernon's Ann.St. provides that:

"In all elections to determine expenditure of money or assumption of debt, only those shall be qualified to vote who pay taxes on property in said city or incorporated town; provided, that no poll tax for the payment of debts thus incurred, shall be levied upon the persons debarred from voting in relation thereto."

This State constitutional provision has been implemented by Articles 5.03, 5.04, and 5.07 of the Texas Election Code, V. A.T.S. providing that only qualified electors who have duly rendered their property for taxation shall be qualified to vote in such elections and only if the individual offering to vote shall sign and swear to an affidavit that he owns property, describing one item thereof, and that he has duly rendered it for taxation. A false affidavit in this regard is a felony, punishable as such.

In a Texas State Court the plaintiffs brought a class action charging that officials of the City of Fort Worth had announced that a bond issue election would be held during 1970 and that their right to vote as non-property owners in such an election was in imminent danger of denial because of the foregoing provisions of the Texas Constitution and the Texas Election Code. They asked the state court to declare these constitutional and statutory provisions null and void as in conflict with the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

Later, a supplemental petition particularly singled out Article 5.04 of the Election Code. Still later, another supplemental petition was filed in the state court by which it was alleged that the City of Fort Worth had officially admitted that the constitutional and statutory provisions would be enforced in any future bond issue election.

On June 12, 1970, the case was submitted to the state court on motions for summary judgment filed by parties on both sides.

On August 25, 1970, the state court addressed a letter to all parties, announcing that the plaintiffs' motion for summary judgment "should be and is hereby overruled" and that the defendants' motions for summary judgment "should be and they are hereby sustained". Eight days later, September 2, 1970, the state court order was formally entered. No appeal was prosecuted to any Texas appellate court.

On August 10, 1970, the City Council of Fort Worth called a special bond issue election for September 8, 1970, for the purpose of submitting the issuance of general obligation bonds for certain permanent city improvements. The election was held as called, that is, on September 8, 1970. The resident qualified electors who had owned and duly rendered taxable property voted separately from the other resident qualified electors who owned no property. The returns were counted separately and in the aggregate with the result that the bond issue proposals which passed had been approved by both property owners and non-property owners. Propositions

which failed had been approved by a majority of the non-property owners but also failed upon a tabulation of the votes of all those voting, including those who owned and did not own property. In other words, the votes cast separately by the non-property owners had no effect on the outcome of the election or the approval or disapproval of any proposed bond issue.

After the state court had announced its decision rejecting plaintiffs' claims, but before the formal order was entered, the plaintiffs in the state court suit repaired to the United States District Court (August 31, 1970) where they filed a class action against the City of Fort Worth, certain of its officials, and the Attorney General of Texas, seeking to have declared unconstitutional the very same provisions of the Texas Constitution and the Texas Election Code which they had unsuccessfully attacked in the state court suit. They also sought to enjoin the holding of the proposed election on September 8, 1970, or "any other election" [without describing the nature of such elections] in a manner which would suggest that ownership and rendition of property for taxation was a prerequisite to the right to vote or to have one's vote counted, receiving the votes of non-property owners separately, or requiring the affidavits prescribed by statute. Because the provisions herein referred to apply only to bond issue elections and a bond issue election was the subject of the challenge, the language "any other election" has no significance unless it could be said that plaintiffs intended to refer to some unannounced election which might be held at some indefinite time in the future.

The only relief sought in the federal court which had not been sought in the state court was that the Attorney General of Texas be directed to certify bond issues on the basis of all votes cast in an election without reference to ownership of property or the execution of affidavits of ownership. It was likewise asked that the Attorney General be enjoined from refusing to certify bond issues on the ground that votes had been cast by non-property owning qualified electors. This would, of course, have been an unavoidable consequence of the holding sought and lost in the state court.

The parties asked for a Three Judge Court but since time limitations made it impossible to convene such a Court between the date of the petition (August 31) and the date of the election (September 8) an *agreed* order was entered by the initiating Judge allowing the election to proceed as scheduled. Plaintiffs stated that in their opinion holding the election would not moot the case as they could concentrate on the prayer for relief against the Attorney General, enjoining the issuance of the bonds if any were approved. It apparently never occurred to them that the vote of the non-property owners might make no difference in the outcome of the election, as turned out to be the case.

On September 14, 1970, the plaintiffs-appellants filed a supplemental complaint asking that the Attorney General of Texas be temporarily, and upon final hearing, permanently enjoined from certifying the issuance of bonds which were voted in the election of September 8, 1970, or in any other election held by a political subdivision of the State of Texas in which the requirements set forth by the aforementioned provisions of the Texas Constitution and Texas Election Code are observed. This complaint also asked that the City of Fort Worth, its Mayor and City Secretary, be temporarily and upon final hearing permanently enjoined from selling bonds voted in the election of September 8.

This amended complaint overlooked the fact that the votes of the non-property owners had been in favor of the bond issues which were approved by the voters as a whole.

A Three Judge Court was assembled for the purpose of hearing the case on June 4, 1971. That Court, however, was of the opinion that it was without jurisdiction, dissolved itself, and ordered the

case remanded to the District Judge before whom the complaint was originally filed. On June 30 the District Judge entered an order again dismissing the case for lack of jurisdiction.

We quote the following from the memorandum opinion of the District Judge:

"The basis for the action of the three-judge court was that these plaintiffs had litigated this same issue in Cause No. 57283–C, Kathleen Carter, et al v. Fort Worth Independent School District and the City of Fort Worth, in the District Court of Tarrant County, Texas, 141st Judicial District, Brown v. Chastain, 5 Cir., 416 F.2d 1012 (1969); Paul v. Dade County, Florida, 5 Cir., 419 F.2d 10 (1969). The defendants' motion to dismiss now before the resident judge for action is predicated upon the same ground.

"The plaintiffs in the state court action are the same as the plaintiffs in the case now before this Court. The defendants in the state court suit were the City of Fort Worth and the Fort Worth Independent School District, whereas the City of Fort Worth, two of its officers, and the Attorney General of Texas are defendants in the case here. The reason for the two political subdivision defendants in the state court was that the plaintiffs were challenging an election on a school bond issue as well as one on city bonds. However, the city bond election there involved was the same as the one here. The grounds for attacking the validity of each of the bond elections were the same as those urged in the present case.

"On June 12, 1970, the state court held a hearing on the respective motions for summary judgment filed by the plaintiffs, the Fort Worth Independent School District and the City of Fort Worth. At the conclusion of the hearing, the matter was taken under advisement. On August 25, 1970, the state court judge sent the attorneys in that case a letter saying in part:

'After careful consideration and study, the Court is of the opinion that the Plaintiffs' Motion for Summary Judgment should be, and is hereby overruled, and that the Defendants' Motions for Summary Judgment should be and they are hereby sustained.'

"Judgment was entered on September 2, 1970, in accordance with such pronouncement. The plaintiffs gave notice of appeal but later abandoned their appeal after filing the present case in the federal court on August 31, 1970.

"The following language from Judge Dyer's opinion in Brown v. Chastain, supra, 416 F.2d at p. 1013, is pertinent here:

'It is obvious from the complaint and the requested relief that the appellants are here attempting to relitigate their federal constitutional claims by obtaining a form of direct federal district court review of the state decisions . . . .

'. . . . If the [state court] decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding . . . .

'. . . . [F]ederal courts most assuredly do not provide a forum in which disgruntled parties can re-litigate federal claims which have been presented to and decided by state courts.'

"The plaintiffs here chose the state court as the forum to litigate the very issue they are now presenting to this Court. After having had their day in court, they want to relitigate their case here.

"Both Brown v. Chastain and Paul v. Dade County, supra, held that under circumstances similar to those in this suit, the appropriate action was to dismiss the cases for lack of jurisdiction."

This Court is, of course, well aware of the decision of the Supreme Court of Texas in Montgomery Independent School District v. Martin, 1971, 464 S. W.2d 638, in which that Court upheld the constitutional and statutory provisions limiting voting rights in school bond issue elections to electors who are property owners and who have rendered their property for taxes. Specifically, the Supreme Court of Texas held that these requirements do not deny equal protection of the law. We are unable to locate any citation which would indicate a petition for certiorari to the Supreme Court of the United States. Of course, these were different litigants, but the present parties plaintiff took no appeal from the decision of the Texas trial court.

We are likewise aware of the decision of the Supreme Court of the United States in Kramer v. Union Free School District, 1969, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583, and Cipriano v. City of Houma, 1969, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647. In this connection see, also, Stewart v. Parish School Board of Parish of St. Charles, 3-Judge Court, (E.D., La., 1970), 310 F. Supp. 1172, affirmed 400 U.S. 884, 91 S.Ct. 136, 27 L.Ed.2d 129.

■ The sole issue presently before us is: Whether the Three Judge Court or the District Court sitting as a single judge had jurisdiction of the case. We do not consider the merits.

■ Our prior decisions in Brown v. Chastain, *supra*, and Paul v. Dade County, *supra*, are plainly controlling here, as decided by the courts below. The parties were the same, the issues were the same. The plaintiffs lost what they allowed to become a final judgment in the state court and started over again in the federal courts. That is the point to be emphasized here. The present parties are through. That does not foreclose the right of others to file an appropriate action in the federal system if the occasion should arise.

■ Finally, we must deal with the plaintiffs' contention that their federal action sought injunctive relief from "any other election" to be held under the Texas Constitution and Election Code as written. The plaintiffs say that this aspect of their complaint differentiates it from the complaint filed in Texas state court, and thus that the additional relief requested removes the federal suit from the scope of Brown v. Chastain and Paul v. Dade County, *supra*. But the plaintiffs have not alleged that any particular election is now pending or will be pending at any time in the near future. Irreparable injury, an indispensable ingredient of injunctive relief, is purely speculative at this time and it was purely speculative at the time the federal suit was filed, at least as to unspecified future elections. We therefore hold that the portion of the plaintiffs' complaint which looked to "any other election" failed to state a request for injunctive relief that was ripe for constitutional decision, and that the district court had no jurisdiction to grant relief on that portion of the complaint. For it has long been true that "federal judicial power is to be exercised to strike down legislation, whether state or federal, only at the instance of one who is himself immediately harmed, or immediately threatened with harm, by the challenged action". Poe v. Ullman, 1961, 367 U.S. 497, 504, 81 S.Ct. 1752, 1756, 6 L.Ed.2d 989, 996.

The judgments dismissing the complaint are

Affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.